UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


COMERICA BANK,

     Plaintiff,

vs.                                    Case No. 17-11131

ENAGIC CO. LTD., ENAGIC USA, INC.,         HON. AVERN COHN
JON SWARDSTROM, JOHN SCHEPCOFF,
and CLAUDIA RICHARDSON,

     Defendants.

_____/

## MEMORANDUM AND ORDER
## DENYING ENAGIC USA'S INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Doc. 21)
## AND
## GRANTING ENAGIC CO. LTD'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (Doc. 16)[1]

### I. Introduction

This is essentially a trademark case. Comerica Bank (Comerica) has sued two companies: Enagic Co. Ltd, a Japanese company, (Enagic Japan) and Enagic USA, Inc. (Enagic USA) and three individuals: Jon Swardstrom, John Schepcoff, and Claudia Richardson.[2] Comerica claims that defendants have violated its trademarks and otherwise disparaged Comerica. As will be explained Enagic manufacturers, distributes, and sells-via individual distributors–a water filtration system. Comerica says

_____

[1] Upon review of the parties' papers, the Court deems these matters appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

[2] Schepcoff and Richardson stipulated to the entry of permanent injunctions. See Docs. 23, 24. A default judgment and permanent injunction has been entered against Swardstrom. See Doc. 39.

that in attempting to sell the system, individual distributors improperly claimed that Comerica endorsed the system and would provide financing for the system. Enagic maintains that it has no control and no prior knowledge of the actions of the individual distributors. Comerica says that Enagic is responsible the actions of its distributors.

Before the Court is Enagic USA's motion to dismiss for failure to state a claim and Enagic Japan's motion to dismiss for lack of personal jurisdiction. For the reasons that follow,

Each motion is separately considered below.

## II.  Motion to Dismiss for Failure to State a Claim

### A.  Background

The relevant facts as gleaned from the complaint follow:

Enagic USA is the United States distribution and marketing arm of Enagic Japan, a global company that manufactures water filters and related products that supposedly provide countless health benefits.[3] (Doc. 1, complaint, ¶¶4, 29-31. The main product line Enagic Japan sells, and Enagic USA markets and distributes throughout the United States, is a series of water filters Enagic claims produces "electrolytic water" it refers to as KANGEN WATER. Id. at ¶11. Enagic USA owns a United States trademark registration for KANGEN, as well as a registered trademark for the Enagic slogan CHANGE YOUR WATER …CHANGE YOUR LIFE. Id. at ¶44. Enagic Japan owns several other U.S. trademark registrations that Enagic and its distributors widely use throughout the United States. Id. at ¶42.

---

[3]Enagic USA and Enagic Japan will be referred to collectively as "Enagic" where appropriate.

Enagic USA's business model includes a web of distributors who sell Enagic products directly to consumers across the country and who also recruit new Enagic distributors.  Id. at ¶¶52-59.  Enagic distributors receive a commissions on sales of Enagic products to consumers, and also receive a commission for sales made by any "Down-line" distributors who they recruited or who were recruited to Enagic by one of their existing "Down-line" distributors.  Id.  Enagic USA controls how its distributors market and sell Enagic products in several ways, including by licensing Enagic's trademarks to the distributors, providing marketing materials, providing training, and reserving to Enagic USA the authority to discipline distributors who do not comply with Enagic's policies.  Id. at ¶59.

In the spring of 2015, Comerica began receiving reports that its customer service representatives were receiving phone calls asking about Comerica's special financing program for consumers who wished to purchase Enagic products.  Id. at ¶82. After investigating the matter, Comerica identified widespread use of its trademarks in online videos and websites promoting Enagic products.  This included several videos published on YouTube making false statements about Comerica such as Enagic "work[s] with Comerica," that Comerica is "willing to stick their necks out and enable [Enagic's] product," and that Comerica offers special financing, including at a special 1-800 number, for consumers interested in purchasing Enagic products. Complaint, ¶¶63, 68, 72, 81.  The videos are cited in the complaint.  Id. at ¶¶63, 68, 81.

After identifying these statements, Comerica contacted Enagic USA.  Id. at ¶83-84.  Enagic USA replied, through counsel, and stated that "the only thing that can be determined" was that the responsible distributors "are not authorized or approved by

Enagic" and that Enagic had "no further information to provide."  Ex. AA to complaint.  In follow up email correspondence, Enagic reiterated that there was nothing it could do, stating "it would be futile to look to us for relief as we have no control or relationship with these sites."  Exhibit CC to complaint.  Comerica says that despite its ability to do so and its actual knowledge of these false statements, Enagic did nothing to stop or prevent its distributors from using Comerica's trademarks or making false statements about Comerica.  Id. at ¶99.

B.  Legal Standard

Fed. R. Civ. P. 8(a)(2) sets forth "modest notice-pleading requirements" that are to be liberally construed.  CNH America v. UAW, 645 F.3d 785, 794 (6th Cir. 2011); see also Smith v. City of Salem, 378 F.3d 566, 576 n.1 (6th Cir. 2004) (applying the "liberal pleading standards of Federal Rule of Civil Procedure 8").  Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the * * * claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

A Fed. R. Civ. P. 12(b)(6) motion tests the sufficiency of a plaintiff's pleading. Courts evaluate Rule 12(b)(6) motions by construing the complaint in the light most favorable to the plaintiff, accepting all factual allegations as true, drawing all reasonable inferences in favor of the plaintiff, and ultimately determining whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 470.  A claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Ashcroft v. Iqbal, 566 U.S. 662, 678 (2009). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Twombly, 550 U.S. at 555. A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id.

"In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), th[e] Court may only consider 'the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice.'" Murray v. Geithner, 624 F. Supp. 2d 667, 671 (E.D. Mich. 2009) (citing 2 James Wm. Moore et al., Moore's Federal Practice 12.342 (3d ed. 2000)); see also Weiner v. Klais & Co., 108 F.3d 86, 89 (6th Cir. 1997) (holding that a document incorporated by reference in a complaint can be introduced by a defendant if it is not attached by plaintiff).

C. Analysis

1.

Enagic USA says the complaint must be dismissed because "it does not allege sufficient facts to show that: (1) Enagic USA encouraged or was involved at all with the activities of the Individual Defendants about which Comerica complains, (2) there were any sales of water ionizers associated with the Individual Defendants' use of Comerica's trademark, and (3) Comerica sustained any damages." (Doc. 21 at p. 5). Comerica says that the complaint is sufficiently plead. The Court agrees with Comerica.

Putting aside that Enagic USA has not differentiated between the eight claims

Comerica has asserted or any of the elements and has relied upon matters outside of the pleadings in support of its motion, Enagic's primary argument is that Comerica has asserted no facts to support its allegations that Enagic USA played any role in the false statements about Comerica. This essentially boils down to the argument that (1) Enagic is not responsible for the misconduct alleged and (2) Enagic USA has not sufficiently plead its damages.

As to the counts of the complaint, Comerica has alleged a contributory liability claim, i.e. that Enagic USA violated the Lanham Act and state as a contributory infringer and as a conspirator. Under the Lanham Act, liability extends to "those who facilitate infringement." <u>Coach v. Goodfellow</u>, 717 F.3d 498, 503 (6th Cir. 2013); <u>see also Habeeba's Dance of the Arts v. Knoblauch</u>, 430 F. Supp. 2d 709, 714 (S.D. Ohio 2006) (imposing liability for contributory infringement on one who "had enough control over [the direct infringer] to have prevented the infringing event from taking place"). This includes an entity that "continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." <u>Coach</u>, 717 F.3d at 503.

Here, Comerica alleges that Enagic USA is the distribution and marketing arm of Enagic Japan in the United States. Complaint at ¶¶3-5, 43. Comerica also says that Enagic controls how its distributors market and sell Enagic products, including by licensing the Enagic trademarks to its distributors, subjecting them to its distributor policies, offering training to distributors, and retaining the authority to discipline distributors who do not comply with Enagic's policies. <u>Id</u>. at ¶¶58-59. Finally, Comerica alleges that despite having had actual knowledge of the false statements about Comerica since April 2015 at the latest, Enagic USA has not taken action against

the responsible distributors, and allowed the false statements about Comerica to continue.  Id. at ¶99 and at Ex. AA (letter from Enagic USA's General Counsel declining to take any action and stating "we have no further information to provide") and at Ex. CC (statement from Enagic USA's General Counsel that "we have no control or relationship with these sites").

Taken as true, these allegations sufficiently state a claim that Enagic USA engaged in the same "ostrich-like practices" that resulted in a finding of Lanham Act violations based on contributory infringement in Coach.  See 717 F.3d at 55 ("[w]e therefore hold that [defendant] is properly held liable for contributory trademark infringement because he knew or had reason to know of the infringing activities and yet continued to facilitate those activities by providing space and storage units to vendors without undertaking a reasonable investigation or taking other appropriate remedial measures").

As to direct liability, the complaint allegations are sufficient to state a claim of direct liability against Enagic USA under the Lanham Act and the state law violations alleged in the complaint.  The complaint alleges that dozens of distributors are misusing the Comerica Mark and that Enagic maintains extensive control over those distributors. According to Enagic's policies, which are attached to the Complaint, Enagic controls who it accepts as a distributor, use of its registered trademarks by its distributors, the approved methods of marketing, advertising, and selling Enagic products, distributor compensation, how consumers purchase and receive Enagic products, and maintains the authority to discipline distributors who do not comply with Enagic's policies. Complaint, ¶¶58-59, 95-99 and at Ex. P, p. 9-10, 25-26.  This level of control, if proven,

is enough to hold Enagic USA directly liable for the actions of its distributors, who are its agents and trademark licensees.  See Am. Tel. & Tel. Co. v. Winback & Conserve Program, 42 F.3d 1421, 1438 (3d Cir. 1994) (a "principal will be liable in an action brought pursuant to section 43(a) of the Lanham Act based on the agents' foreseeable infringing actions upon which it would be reasonable for [a] third party to rely, provided the third party has no notice that the representations are unauthorized"); see also GEICO v. Google, 330 F. Supp. 2d 700, 704 (E.D. Va. 2004) (denying motion to dismiss Lanham Act claims because, "[a]ccepting as true the facts alleged by plaintiff regarding the inclusion of [its] marks in advertisements and defendants' overall control of their advertising program, we find that plaintiffs have alleged facts sufficient to support their claims that advertisers make a 'trademark use' of GEICO's marks, and that defendants [internet search engines] may be liable for such 'trademark use'").

In the end, Enagic USA's argument that it bears no responsibility for the actions of its distributors presents a factual issue that cannot be decided at the pleading stage. The allegations of the complaint are sufficient to state a claim against Enagic USA.

2.

Enagic USA next contends that Comerica has failed to state a claim because it has not alleged that the false statements about Comerica resulted in the sale of an Enagic product.  Enagic USA essentially argues that the complaint should be dismissed because of a failure to plead "use in commerce."  See Enagic USA's Brief at 13-14. This argument misses the mark.

Comerica has pled, with supporting facts, use of its mark "to attract customers and garner sales of Enagic filters by falsely affiliating Defendant Enagic with Comerica."

8

See Complaint, ¶¶10, 12, 14, 63-64, 67-69, 72-74, 80-81.  The complaint specifically alleges that the defendants are making false statements about Comerica, and using its trademark in the process, for the purpose of selling more Enagic products.  Complaint, ¶¶10, 12, 14, 63-64, 67-69, 72-74, 80-81.  This constitutes "use in commerce." See Kelly Svcs. v. Creative Harbor, 124 F. Supp. 3d 768, 776 n.2 (E.D. Mich. 2014) (plaintiff "correctly argues that an actual sale is not necessary to establish use") (internal punctuation omitted); Planetary Motion v. Techsplosion, 261 F.3d 1188 (11th Cir. 2001) ("a party may establish 'use in commerce' even in the absences of sales"); Hoenig Developments v. Dial Inds., 213 F. Supp. 3d 895, 903 (E.D. Mich. 2016) (solicitations sent to retailers satisfied "use in commerce" requirement because they showed defendant was "trying to sell" products with the infringing mark); PETA v. Dougherty, 263 F.3d 359, 365 (4th Cir. 2001) ("[t]o use PETA's Mark 'in connection with' goods or services, [defendant] need not have actually sold or advertised goods or services on the www.peta.org website"); Florists' Transworld Delivery, Inv. v. Fleurop-Interflora, 261 F. Supp. 2d 837, 847-50 (E.D. Mich. 2003) (finding "[t]here is no requirement that consumer goods be sold or purchased" to state a claim under M.C.L.A. §445.903, pleading "advertising" or "solicitation" is sufficient) (internal quotations omitted).  Thus, Enagic USA's"actual sales" argument does not warrant dismissal of the complaint.

Moreover, the alleged false statements using Comerica's trademark also arguably constitute commercial speech in the form of advertisements, despite Enagic USA's assertion to the contrary.  Enagic USA cites Taubman Co. v. Webfeats, 319 F.3d 770 (6th Cir. 2003), for the proposition that the Lanham Act applies where a trade name or trademark is used in connection with advertising.  Enagic USA, however, contends

that use of Comerica's name and trademark as alleged "does not constitute an advertisement." Enagic USA's Brief at 13. This argument does not carry the day.

It is not only plausible, but very likely, that the false statements at issue constitute advertisements. The purpose of the promotional videos and websites is to (I) sell Enagic's products to consumers, and (ii) recruit new Enagic distributors to sell Enagic's products to consumers. These are sufficiently alleged commercial purposes.

Enagic USA, however, argues that when its distributors made those false statements of affiliation between Comerica and Enagic, they were "merely asserting special financing," acting as though financing were the ends and not the means. Enagic USA's Brief at 14. Not so. By announcing supposed "special financing" in their promotional videos and websites, Enagic's distributors sought to sell more Enagic products and recruit "down-line" distributors. In short, Enagic USA's argument that Comerica has failed to plead use in commerce fails because the false statements cited in the Complaint are advertisements, and "[e]ven minimal advertisements constitute use of the owner's trademark in connection with the advertising of the goods, which the Lanham Act proscribes." Audi AG v. D'amato, 469 F.3d 534, 546 (6th Cir. 2006). Dismissal is not warranted on this ground.

3.

Enagic USA also says that the complaint should be dismissed because Comerica has not sufficiently pled damages fails. This argument is unavailing. First, damages are not an element of any of Comerica's causes of action and therefore, a supposed failure to plead damages is not grounds for dismissing any of Comerica's claims. "It is not necessary for plaintiff in a trademark or unfair competition case to prove

any past or present actual damages since one of the major benefits of injunctive relief is that it can be obtained prior to actual damage so as to prevent that damage from occurring." 5 Thomas McCarthy, Trademarks And Unfair Competition §30:2 (4th ed. 2015). Moreover, Comerica also has brought a claim for trademark dilution under 15 U.S.C. §1125(c) which, by its plain text, gives rise to a cause of action "regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury."

Even if Comerica is required to plead its damages, Enagic USA's arguments fail. The only case Enagic USA cites is Dexter v. Mac, 2015 WL 93250 (E.D. Mich. Jan. 7, 2015). The plaintiff in that case was pro se and sought $1 million for unspecified "pain and suffering and intentional inflicted emotional distress." Id. at *1. The plaintiff alleged only four vague paragraphs of factual content in support of her complaint. Id. Here, Comerica has submitted a 149-paragraph complaint supported by thirty two detailed exhibits. Here, the complaint includes specific factual allegations detailing Enagic's false statements about Comerica, Enagic's business practices with which Comerica is being associated, and how such association harms Comerica's goodwill and business reputation. The same is true of Comerica's common law claims for trademark infringement and unfair competition, and its claim under M.C.L.A. §§445.903(a) and (c), the elements of which mirror the federal counterparts. Microsoft Corp. v. Compusource Distribs., 115 F. Supp. 2d 800, 807 (E.D. Mich. 2000) ("[t]he applicable standard under the MCPA and Michigan common law is the same as the tests for federal trademark infringement and federal unfair competition under 15 U.S.C. §§1114(1) and 1125(a): whether confusion is likely"). Common law unjust enrichment also does not require a

11

damages element.  See Barber v. SMH (US), 202 Mich. App. 366, 375 (Mich. Ct. App. 1993) ("The elements of a claim for unjust enrichment are: (1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant").  In addition, Comerica can seek statutory damages under 15 U.S.C. §1117(a), which allows this Court to award damages in any such "sum as the court shall find to be just, according to the circumstances of the case."  Although the precise amount of Comerica's damages is to be determined, "it is important to distinguish between uncertainty in the fact of damage and in the amount of damage."  Mendoza v. Zirkle Fruit Co., 301 F.3d 1163, 1171 (9th Cir. 2002).

### III.  Motion to Dismiss for Lack of Personal Jurisdiction

### A.  Legal Standard

When bringing an action in federal court, the plaintiff bears the burden of establishing that jurisdiction exists.  Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)).  The district court has discretion to either; "decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions."  Theunissen, 935 F.2d at 1458.

When, as here, a federal court's jurisdiction is premised on a federal question, as is the case here, "personal jurisdiction over a defendant exists 'if the defendant is amenable to service of process under the forum state's long–arm statute and if the exercise of personal jurisdiction would not deny the defendant due process."  Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog, 954 F.2d 1174, 1176 (6th

Cir. 1992)

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." Daimler AG v. Bauman, 134 S. Ct. 746, 753 (2014). Michigan law recognizes two bases for personal jurisdiction over unincorporated entities: general, M.C.L. § 600.731, and specific (also called "limited personal jurisdiction"), M.C.L.§ 600.735. Michigan's so-called Long Arm Statute defines the scope of its limited personal jurisdiction. But "[t]he Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." Walden v. Fiore, ___ U.S. ____, 134 S. Ct. 1115, 1121 (2014). Michigan interprets its Long Arm Statute to allow personal jurisdiction to extend to the limits imposed by the federal constitution. Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog, 954 F.2d 1174, 1176 (6th Cir. 1992). "Due process requires that a defendant have 'minimum contacts...with the forum State...such that he should reasonably anticipate being haled into court there.' " Schneider v. Hardesty, 669 F.3d 693, 701 (6th Cir. 2012) (quoting World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980)). This requirement ensures that the exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945); Schneider, 669 F.3d at 701. "Depending on the type of minimum contacts in a case, personal jurisdiction can either be specific or general." Air Products & Controls, 503 F.3d at 549–50 (citing Reynolds v. Int'l Amateur Athletic Fed'n, 23 F.3d 1110, 1116 (6th Cir. 1994)).

Here, Comerica says that the Court has general and limited jurisdiction over Enagic Japan. Each is addressed in turn below.

1.  General Jurisdiction

General jurisdiction requires the defendant to have "continuous, substantial, and systematic" contacts with the forum State. <u>Daimler AG v. Bauman</u>, ___ U.S. ____, 134 S. Ct. 746, 769 (2014). As the Supreme Court has articulated, the defendant's "affiliations with the State [must be] so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. ____, 131 S. Ct. 2846, 2851 (2011).

Comerica contends that general personal jurisdiction is established because in 2010 Enagic Japan, along with Enagic USA, was a plaintiff in two trademark infringement lawsuits filed in federal court in California. Comerica says that statements in the pleadings in these prior cases make clear that Enagic Japan is engaged in business throughout the United States. Enagic Japan says that these years old cases in another district do not establish the level of ties sufficient to establish general jurisdiction.

The Court agrees with Enagic Japan. Enagic Japan was named as a plaintiff but it, not Enagic USA, hold the trademark registration. The pleadings in both cases did not differentiate between Enagic Japan and Enagic USA. Moreover, and most importantly, there is nothing in the pleadings in these prior cases which show that Enagic Japan had "continuos, substantial, and systematic" ties with Michigan. See <u>Goodyear</u>, 131 S. Ct. at 2856 (rejecting "sprawling view" of general jurisdiction urged by the plaintiff in which "any substantial manufacturer or seller of goods would be amenable to suit, on any claim for relief, wherever its products are distributed."); <u>Johnston v. Multidata Sys. Int'l Corp.</u>, 523 F.3d 602, 611–614 (5th Cir. 2008) (illustrating "just how difficult it is to

establish general jurisdiction" and holding that general jurisdiction was lacking over the defendants, including a defendant that maintained no business in the forum, despite the fact that over a five year period it sold $140,000 worth of goods and service–related contracts to customers in the forum, representing 3% of its business, its employees periodically traveled to the forum, and its advertisements in national publications reached the forum).

## B. Limited Personal Jurisdiction

Comerica also says that the Court has limited or specific personal jurisdiction over Enagic Japan. In support, Comerica has pleaded the following facts to argue this Court can constitutionally exercise personal jurisdiction over Enagic Japan:

(1) Enagic Japan manufactures and ships products throughout the world including the Eastern District of Michigan; and

(2) Defendant Enagic Japan has continuous and systemic contact with Michigan through sales and distribution of Enagic products in Michigan.

Doc. 1, Compl. ¶¶ 7, 8.

"'Specific' or 'case-linked' jurisdiction depends on an affiliation between the forum and the underlying controversy (i.e., an 'activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation')." Walden, 134 S. Ct. at 1122 n.6 (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, ___U.S. ____, 131 S. Ct. 2846, 2851 (2011)). "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.' " Indah, 661 F.3d at 920 (quoting Goodyear, 131 S. Ct. at 2851). In other words, "[w]hen the cause of action at issue 'arises out of or relates to' [the defendant's]

15

contacts [with the forum], a court may properly assert personal jurisdiction, even if those contacts are 'isolated and sporadic.' " Red Wing Shoe Co. v. Hockerson–Halberstadt, Inc., 148 F3d 1355, 1359 (Fed. Cir. 1998) (quoting Burger King, 471 U.S. at 472–73). The Sixth Circuit has identified three requirements which must be satisfied to exercise specific jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Beydoun v. Wataniya Rest. Holding, Q.S.C., 768 F.3d 499, 505 (6th Cir. 2014) (quoting Southern Machine Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968)).

1. Purposeful Availment

The Sixth Circuit "views the purposeful availment prong of the Southern Machine test as 'essential' to a finding of personal jurisdiction." Intera Corp. v. Henderson, 428 F.3d 605, 616 (6th Cir. 2005) (citing Calphalon Corp. v. Rowlette, 228 F.3d 718, 722 (6th Cir. 2000)). "Purposeful availment" occurs when "the defendant's contacts with the forum state 'proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State'." Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 889 (6th Cir. 2002) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). Physical presence within the state is not required to create such a connection. Southern Machine, 401 F.3d at 382. The Supreme Court has "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." Burger King Corp., 471 U.S. at 476.

Enagic Japan argues that it did not purposefully avail itself of the privilege of acting in Michigan because Comerica has not alleged any facts showing that Enagic Japan purposely directed any activity toward Michigan. For example, Comerica does not allege that representatives of Enagic Japan traveled to Michigan, that Enagic Japan maintains property in Michigan, or that Enagic Japan maintains a place of business in Michigan from which it solicits sales of ionizers. See Compl. ¶¶ 2-20. Instead, Comerica simply alleges that Enagic Japan ships products all over the world, including to Michigan. Id. at ¶ 7.

These are general allegations. Comerica has not alleged that Enagic Japan engaged in some wrongful act in Michigan so as to establish the requisite substantial connection between Enagic Japan's activities and Comerica's claims. Further, Comerica's allegations are directly disputed through the declaration of Koichiro Higa of Enagic Japan. His declaration states:

- Enagic Japan is a Japanese Company with its principal place of business in Okinawa, Japan;

- Enagic Japan has never done business in Michigan;

- Enagic Japan has no employees located in the State of Michigan;

- Enagic Japan does not maintain any offices in the State of Michigan;

- Enagic Japan owns no real or personal property in the State of Michigan;

- Enagic Japan does not advertise in the State of Michigan; and

- Enagic Japan has no sales representatives in the State of Michigan.

Higa Decl. at ¶¶ 3, 7-8.

Comerica points to types of conduct that it believes satisfy the purposeful

availment requirement: (1) creating a nationwide interactive website; (2) product demonstrations and training sessions in Detroit by its distributors. "A defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 890 (6th Cir. 2002) (citing Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa.1997)). Courts have characterized websites according to the degree of their interactivity, describing them as "highly interactive" — "which is the ability to download and enter into contracts," and therefore will support personal jurisdiction; a "middle ground" — which allows some exchange of information and sometimes may justify exercising personal jurisdiction; and "passive" — which displays information only, and seldom will be sufficient "to establish purposeful availment for the purpose of due process." Audi AG & Volkswagon of Am., Inc. v. D'Amato, 341 F. Supp. 2d 734, 742-43 (E.D. Mich. 2004); see also Inc. v. Imago Eyewear Pty, Ltd., 167 F. App'x 518, 522 (6th Cir. 2006).

Here, the plaintiff alleges that orders may be placed through the defendant's website, which it says is jointly owned by Enagic USA and Enagic Japan. Engaic Japan, however, says that only Enagic USA operates and monitors the website. Enagic Japan also says that a purchaser cannot buy an Enagic product through the Enagic website unless that purchaser is sponsored by an Enagic USA distributor. Second, the website provides information about the company and its products. And while sales can be recorded through the website, they are not made through that medium. See http://www.enagic.com/shop/en/?chc=US. A customer can choose a water ionizer on

18

the website and enter identifying information, but the next page requests that the customer fill out a sponsor I.D., sponsor name, and sponsor email address in order to attribute the sale to the independent distributor who sold the product. Enagic USA's independent contractors sell its water ionizers through face-to-face interactions. Therefore, any alleged contacts generated by the website belong to Enagic USA.

Comerica cites two cases in support of its argument that the existence of the Enagic USA website allows this court to exercise jurisdiction over Enagic Japan — Audi AG and Volkswagon of Am. v. D'Amato, 341 F. Supp. 2d 734 (E.D. Mich. 2004) and See Inc. v. Imago Eyewear Pty., 2004 WL 5569067 (E.D. Mich. Oct. 12, 2004). Enagic Japan says that neither case supports jurisdiction over it. The Court agrees.

In Imago, another judge in this district held that jurisdiction cannot be asserted over an Australian company's website where the website does not permit sales of the products. Imago Eyewear Pty., 2004 WL 5569067 at **5-6 ("The Court finds that the Defendants' website is a passive one, and therefore not to the degree where the exercise of personal jurisdiction is proper. Defendants' website displays information about its water ionizers, but the water ionizers cannot be purchased through the website."). Here, as noted above, Enagic USA's website does not permit sales of its water ionizers. Furthermore, Enagic Japan does not control or monitor the website. The Imago case actually supports Enagic Japan's position that it is not subject to personal jurisdiction in Michigan.

In Audi case, the court found that the website sold products that infringed on the plaintiffs' trademarks and noted that the plaintiffs resided in Michigan. Audi AG, 341 F. Supp. 2d at 744 (holding that the website supported personal jurisdiction in Michigan, in

part, because "the goods sold on the website allegedly infringed upon Plaintiffs' trademarks who principally reside in Michigan."). Here, however, Comerica alleges that the infringement results from private, non-authorized websites run by independent contractors of Enagic USA.

Overall, the Enagic website does not show that Enagic Japan purposefully availed itself of doing business in Michigan. The same can be said of demonstrations and training by distributors. The record shows that the distributors are affiliated with Enagic USA, not Enagic Japan. Actions of the independent distributors cannot be imputed to Enagic Japan under the circumstances.

The Sixth Circuit considers the "quality of the contacts, and not their number or status," to determine "whether they amount to purposeful availment." CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1265 (6th Cir. 1996) (internal quotation marks omitted). Here, there are simply insufficient contacts between Enagic Japan and Michigan to established that the allegedly infringing activities show that Enagic Japan purposefully availed itself of the benefits of doing business in Michigan.

Enagic Japan's contacts with Michigan amount to purposeful availment, giving it no "reason to foresee being 'haled before' a Michigan court." Audi AG & Volkswagon of Am., Inc. v. D'Amato, 341 F. Supp. 2d at 742 (citing Sports Auth. Michigan, Inc. v. Justballs, Inc., 97 F. Supp. 2d 806, 811 (E.D. Mich. 2000)).

2.  Cause of Action Arising From Local Activities

The "arising from" prong is satisfied "when the operative facts of the controversy arise from the defendant's contacts with the state." Calphalon, 228 F.3d at 723. "The law of this circuit is that the 'arising from' requirement is satisfied if the cause of action is

20

'related to' or 'connected with' the defendant's forum contacts." <u>Youn v. Track, Inc.</u>, 324 F.3d 409, 419 (6th Cir. 2003).

The trademark allegations which form the basis for this lawsuit do not arise from the shipment of Enagic products to Michigan. Rather, the allegations of infringement come from statements by Enagic distributors on the internet regarding an alleged affiliation between Enagic and Comerica. The harm comes from Enagic's customer confusion as to Comerica's endorsements of Enagic's products. This harm is not related to Enagic Japan, but rather to actions of Enagic distributors. Thus, this element of personal jurisdiction is not satisfied.

### 3. Reasonableness

Even assuming the first two elements are met, courts also determine the reasonableness of exercising personal jurisdiction over a defendant by weighing several factors, including "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." <u>Intera Corp.</u>, 428 F.3d at 618. Regular business relationships with a forum, and plans to continue those relationships, can support a finding of reasonableness. <u>See Neogen</u>, 282 F.3d at 892 ("[The defendant] anticipates from year to year that it will conduct a given level of sales in Michigan....Although [the defendant's contracts with] individual customers do not represent 'continuing relationships and obligations' with those particular customers, its predictable yearly business in Michigan does represent such a continuing relationship with the state overall.").

Here, the reasonableness element pertains less to the factors articulated above

21

and more to whether Enagic USA and Enagic Japan are alter egos such that the exercise of personal jurisdiction over Enagic Japan is fair, i.e. consistent with due process.

While Comerica alleges Enagic USA and Enagic Japan are intertwined and there is no attempt by the company to separate Enagic USA, or any other Enagic entities operating in other countries. Rather, Comerica says that the company refers to itself as simply "Enagic." Comerica also notes that Enagic USA and Enagic Japan share common officers and directors and corporate counsel.

These allegations are insufficient to establish reasonableness. Even where alter ego or conspiracy theories are alleged, a court must evaluate each defendant's contacts with the forum. Beydoun v. Wataniya Rest. Hold., Q.S.C., 768 F.3d 499, 505 (6th Cir. 2014) (holding that a party seeking to establish the existence of personal jurisdiction bears the burden to establish such jurisdiction over reach defendant independently); , 471 U.S. 462, 475 (1985). Even if one member of the alleged scheme comes within the court's jurisdiction that the court may exercise jurisdiction over other non-residents who are alleged to be part of the scheme. Chrysler Corp. v. Fedders Corp., 643 F.2d 1229, 1236-37 (6th Cir. 1981).

Here, the record shows that Enagic Japan does not have the requisite ties with Michigan to establish limited personal jurisdiction.

IV. Conclusion

For the reasons stated above, Enagic USA's motion to dismiss for failure to state a claim is DENIED.

Enagic Japan's motion to dismiss for lack of personal jurisdiction is GRANTED.

The Clerk shall schedule a status conference to chart the future course of the case, including proceedings on Comerica's motion for a preliminary injunction.  See Doc. 7.

SO ORDERED.


S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: November 21, 2017
        Detroit, Michigan